**In the Matter of Alva Louis STOUT, Debtor.**

**ALBANY STATE BANK, Plaintiff,**

v.

**Alva Louis STOUT, Defendant.**

**Bankruptcy No. 83–02487–SJ.**
**Adv. No. 84–0026–SJ.**

United States Bankruptcy Court,
W.D. Missouri,
St. Joseph Division.

April 18, 1984.

Scott Ross, Zahnd, Dietrich & Ross, Ma-.ryville, Mo., for plaintiff.

Hugh A. Miner, Hugh A. Miner, P.C., St. Joseph, Mo., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND FINAL DECREE AND JUDGMENT DECLARING DEFENDANT'S INDEBTEDNESS TO PLAINTIFF TO BE DISCHARGEABLE IN BANKRUPTCY

DENNIS J. STEWART, Bankruptcy Judge.

The plaintiff bank sues for a decree of nondischargeability of all that the defendant currently owes it on the basis of a contention that defendant intentionally falsified financial statements as to the existence of a prior lien on three pieces of machinery which were subject to a prior lien in favor of the Ford Motor Credit Corporation. It is the plaintiff's contention that the indebtedness is nondischargeable under so much of § 523(a)(2) of the Bankruptcy Code as excepts from discharge liabilities created by a debtor's intentional misrepresentation.

The action came on before the bankruptcy court for trial on April 16, 1984, in St. Joseph, Missouri, whereupon plaintiff appeared by Scott Ross, Esquire, its counsel, and the defendant appeared personally and by Hugh A. Miner, Esquire, his counsel. The evidence showed clearly that, in two separate financial statements given by defendant to the plaintiff bank on the respective dates of April 14, 1982, and December 14, 1982, the defendant represented that he owned a 1974 model 9600 Ford tractor worth $17,500; an IHC 15 foot disc of a value of $17,000, and a tye bean drill worth $15,000; that, at the time, they were subject to a security interest in favor of the Ford Motor Credit Corporation in a sum approximately equaling or exceeding that amount; that, nevertheless, the defendant did not, on either occasion, disclose the existence of the prior security interest; that credit was initially extended to the defendant by the plaintiff in the sum of $35–36,000 and periodically thereafter in additional sums; that, on December 14, 1983, a renewal note was signed; that the current balance due the bank is some $42,-289.86; that to secure this line of credit, in part, the defendant granted the plaintiff a security interest in "all livestock and machinery," which was perfected by the filing of a financing statement on April 14, 1982; that the defendant admittedly signed the financing statement after the information therein was orally elicited from him by John J. McConkey, the bank president, who prefaced his questioning with a statement to the effect that "this is just to show what you have"; that, accordingly, the defendant now states that he believed the size of his debts to be unimportant; that the defendant "can't recall giving [Mr. McConkey] any information" regarding his debts; that Mr. McConkey did not attempt to check for the existence of any prior liens, although the courthouse where they were recorded was in near proximity to the Albany State Bank; that it was not his practice to do so "because it is a small community and I know Mr. Stout"; that checks were written by Mr. Stout on his account with the Albany State Bank prior to April 1982 for payment on existing debts; that these checks were not known about by Mr. McConkey at the time he made the loans; and that the defendant had on prior occasion borrowed money from other than Albany State Bank in situations where it was necessary for him to render a financial statement.

The plaintiff, in order to obtain a decree of nondischargeability on the basis of § 523(a)(2), must prove the following elements by means of clear and convincing evidence:

"... (1) the debtor made the representations; (2) that at the time he knew they were false; (3) that he made them with the intention and purpose of deceiving the creditor; (4) that the creditor relied on such representations, and (5) that the creditor sustained the alleged loss and damage as the proximate result of the representations having been made."

*In re Taylor,* 514 F.2d 1370, 1373 (9th Cir.1975). In this action, the evidence clearly and convincingly shows virtually all

of the elements without any dispute;[1] the only really disputed points are on the element of intention and reliance. The defendant contends that his omitting any mention of the indebtedness and security interest of the Ford Motor Credit Corporation was wholly innocent in that he did not know that he was supposed to give Mr. McConkey information respecting his debts; that Mr. McConkey gave him this impression when he said, "this is just to show what you have" and subsequently accepted the documents as signed. But Mr. Stout's former experiences in borrowing and rendering financial statements should have told him that this was not so. Nor could Mr. McConkey's prefatory statement to the effect that "this is just to show what you have" excuse him from disclosing his debts, for certainly the magnitude thereof was, by common sense and the experience attributable to defendant, highly relevant to "what he had." Moreover, the forms of financial statement which the debtor signed had on them large and conspicuous blanks provided for the disclosure of indebtedness currently owing by the defendant. And further, according to the uncontradicted[2] testimony of Mr. McConkey, respecting whose credibility there is nothing to impugn, he asked Mr. Stout whether he had any debts and the answer was an unequivocal "no." If these facts are accepted, as they must be, the intentional quality of the misrepresentation is undeniable. It defies reason and common sense to believe that the omission to disclose any debts can have been under any honest belief that it was permissible not to disclose substantial outstanding debts, particularly those which are the basis of security interests in property currently owned.

■ It is also suggested, however, that there could not have been reasonable reliance on the debtor's misrepresentation be-cause of the plaintiff's failure to take the reasonable and readily available precautions to check its accuracy. In this regard, as found above, the evidence clearly shows that Mr. McConkey did not avail himself of the ready and nearby opportunity to check on the existence of perfected security interests. If he had done so, he would have discovered the existence of the security interest of Ford Motor Credit Corporation and other security interests.[3] And the fact that this check was not undertaken by the plaintiff is particularly inexplicable when it was plaintiff's intention itself to file a financing statement in order to perfect a security interest in the chattels which are the subject of this litigation. The courts have recognized that, when a creditor elects not to exercise the investigatory opportunities readily available to it, the ready availability of those opportunities itself negates the reasonableness of any reliance on the debtor's misrepresentation. Consequently, even when that misrepresentation has been intentional, as in the case at bar, the courts have held the indebtedness dischargeable against claims under § 523(a)(2). "A ... bar to discharge does not apply to all cases in which a false financing statement was given. 'It should be confined to cases where the decision to give credit was induced by the false statement ....'" *Matter of Kircher*, 9 B.R. 270, 277 (Bkrtcy.W.D.Mo.1981). "Dischargeability shall not be denied where a creditor's claimed reliance on a statement would be so unreasonable as not to be an actual reliance at all ... The failure to take even routine precautions to investigate the situation ... shows how little reliance [plaintiff] placed on the representations of [defendant]." *In re Montbleau*, 13 B.R. 49, 53, 54 (Bkrtcy.D.Mass.1981). "The majority of cases make it clear that the

---

**1.** The making of the misrepresentation, its materiality, the reliance (if not the reasonableness of the reliance) and the damage that resulted from the misrepresentation are all without question demonstrated by the facts found above.

**2.** In this particular respect, the defendant's testimony is only to the effect that he did not re-member any statement being made by Mr. McConkey which could have constituted an inquiry into his debts.

**3.** These discoveries, in turn, should have led, with reasonable inquiry, to the discovery of other existing indebtedness.

creditor has a duty to make a reasonable effort to check the credit rating of the Debtor and not rely upon just the financial statement." *Matter of Breen,* 13 B.R. 965, 969 (Bkrtcy.S.D.Ohio 1981). These authorities apply to this case, in which plaintiff not only did not bother to check the nearby court records, but also ignored the transactions reflected in the debtor's bank account, which indicated the existence of other debts.[4]

For the foregoing reasons, it is hereby

ORDERED, ADJUDGED AND DECREED that the defendant's indebteness to plaintiff be, and it is hereby, declared to be dischargeable in bankruptcy.

**4.** Mr. McConkey denied actual knowledge of these, but a reasonable investigation into the debtor's credit status would have included a look at the transactions in the plaintiff bank itself.