**In the Matter of Luther Adam ETCHESON, Debtor.**

**UNITED MISSOURI BANK OF CARTHAGE, Plaintiff,**

**v.**

**Luther Adam ETCHESON, Defendant.**

**Bankruptcy No. 84–00377–SW. Adv. No. 84–0196–SW.**

United States Bankruptcy Court, W.D. Missouri, Southwestern Division.

Oct. 30, 1984.

Albert D. Johnston, Johnston & Carlton, Carthage, Mo., for plaintiff.

Robert R. Parrish, Joplin, Mo., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND FINAL DECREE AND JUDGMENT DENYING THE PLAINTIFF'S COMPLAINT FOR A DECREE OF NONDISCHARGEABILITY BUT DIRECTING DEFENDANT TO PAY PLAINTIFF THE SUM OF $154.70 FORTHWITH

DENNIS J. STEWART, Bankruptcy Judge.

The plaintiff United Missouri Bank of Carthage seeks a decree of nondischargeability of the amount due it from the debtor—the sum of $142,574.43—on its assertion that the indebtedness is one created by the defendant's fraud upon it within the meaning of section 523(a)(2) of the Bankruptcy Code. After joinder of the issues by the pleadings, the matter came on before the bankruptcy court for hearing on September 14, 1984, in Joplin, Missouri, whereupon the plaintiff appeared by Albert D. Johnston, Esquire, its counsel, and the defendant appeared personally and by Robert R. Parrish, Esquire, his counsel. The evidence which was presented to the court at this time portrayed a nearly prototypical case in bankruptcies which involve nondischargeability claims based on fraud. The debtor, as alleged, owes a large indebtedness to the bank—the sum of $142,574.43. The indebtedness was initially a secured indebtedness, but the security, by the time of the filing of the bankruptcy proceedings, had virtually all disappeared, used up progressively by a debtor stripped for cash over a protracted period of time prior to bankruptcy.[1] The plaintiff, nevertheless, does not, in this action, explicitly request any decree of nondischargeability based upon any allegation of the debtor's willful and malicious conversion within the meaning of section 523(a)(6) of the Bankruptcy Code. Perhaps the prevailing legal standards which define "willful and malicious" are too rigid and subjective to offer a creditor any hope of a nondischargeable judgment except in the most extreme cases. See the analysis of the governing authorities in *In re Lewis*, 17 B.R. 46 (Bkrtcy.E.D. Ark.1981).[2] The plaintiff, therefore, predicates its claim of nondischargeability on the written financial statement submitted to it by the debtor when the credit giving rise to the current indebtedness of $142,-574.43 was last extended. The evidence which has been adduced in an effort to demonstrate that this financial statement was materially fraudulent shows that, in the financial statement, the debtor substantially overstated his net worth.[3] The principal respect in which this was done was in regard to a tract of real estate, which the debtor purported to own outright and to value at $160,000, but which the evidence shows to have been held by him only under a contract for deed. Further, the evidence also tends to show that the debtor signifi-

---

1. The plaintiff so alleges, as is noted below in the text of this memorandum, in its within complaint.

2. In some decisions, it is held that "a good faith belief (in one's right to dispose of mortgaged property as his own), even though unreasonable, precludes a wilful and malicious intent." *Matter of Roberts*, 8 B.R. 291, 293 (W.D.Mo. 1981).

3. The allegations of the complaint correspond to the proof reasonably faithful in this regard: "said statement was materially false in that it represented that the defendant had a net worth of $466,400.00, to include real estate valued at $160,000.00 on which there was no encumbrance, and to include cattle and other assets of a substantial value."

cantly overstated the number of cattle which he had on hand at the time of the rendering of the financial statement in question. With respect to the shortage of cattle which the evidence demonstrates, it is the plaintiff's contention, manifested by the allegations in the within complaint, that the requisite amount of cattle were at one time on hand, but that the debtor "had in fact fraudulently disposed of much or all of these cattle at the time of seeking the loan from plaintiff." [4]

The defendant, in his testimony before the court, places his factual defense on grounds that are as prototypical as the allegations and proof submitted by the plaintiff—that the financial statement was solicited by the bank and given by him in wooden, mechanical, and negligent compliance with what was either represented or implied to him to be a mere technicality; that, as a result, the significance and materiality of what he was signing was adumbrated to him only through the figurative glass darkly; that he has a limited understanding of matters financial generally and an even more limited understanding of banking procedures, particularly as they related to this financial statement; and that he signed the financial statement without any clear understanding of the markings contained on it and, consequently, with little regard for their accuracy.

There is, however, an atypical aspect to this case as regards the allegation of the debtor's having made a false financial statement. That is that, on August 19, 1983, the debtor entered a plea of guilty in the criminal case of *United States v. Etcheson*, Criminal Action No. 83–05006–01–CR–SW–2, to the following charge:

"On or about September 24, 1981, in the Western District of Missouri, defendant knowingly and wilfully did make a materially false statement in a document entitled Security Agreement, to the United Missouri Bank of Carthage, Missouri, the deposits of which were then insured by the F.D.I.C. for the purpose of influencing the actions of said bank to approve and make a loan to defendant in that defendant stated and represented to said bank that he was the owner of 269 head of cattle, whereas, in truth and fact, as defendant then and there well knew and believed, he was not the owner of 269 head of cattle, all in violation of Title 18, U.S.C. section 1014."

On the basis of the plea of guilty, the defendant was placed on probation for a period of five years.

The plea of guilty and the conviction which is based thereon adequately establish the material intentional misrepresentation which is essential to a nondischargeability case under section 523(a)(2) of the Bankruptcy Code. See *In re Taylor*, 514 F.2d 1370, 1373 (9th Cir.1975). The element which the evidence before the court does not demonstrate, however, is the extension of any new or fresh money in reliance upon the materially false financial statement. The authorities under the former Bankruptcy Act and the new Bankruptcy Code have with unanimity held that the decree of nondischargeability should be issued only with respect to the new or fresh money advanced in reliance on the false financial statement. *In re Danns*, 558 F.2d 114 (2d Cir.1977).[5] There is no affirmative showing in the evidence in this case that any new or fresh money was extended to the defendant in reliance on the false financial statement of September 24, 1981. The documentary evidence which has been submitted to the court during the hearing of September 14, 1984, does not admit of such an inference even by indirection. The financial styatement itself purports to show a pre-existing indebtedness to the bank of at least $87,500.00. And the loan of September 24, 1981, was in the sum of $110,000. In the absence of evidence

---

**4.** The financial statement was actually made on February 19, 1981. It contained a written requirement that the bank be notified of any substantial change. It was presented in support of the loan on September 24, 1981.

**5.** Under the old Act, the majority rule was that the decree of nondischargeability could apply only to the new money. *Matter of Peterson*, 437 F.Supp. 1068 (D.Minn.1977).

otherwise, the larger amount of credit extended may well be attributable to interest on the preexisting loan. For, as noted above, there was no affirmative evidence of the extension of any new or fresh money.[6] Nor was there any evidence of a foregoing of existing remedies or other detriment to the plaintiff. "If the creditor does not forfeit remedies or otherwise rely to his detriment on a false financial statement with respect to existing credit, then an extension, renewal, or refinancing of such credit is nondischargeable only to the extent of the new money advanced." 124 Cong.Rec. H 11,095-6 (Sep. 28, 1978); S 17,412-13 (Oct. 6, 1978). Under such circumstances and such failure of proof, the decree of nondischargeability does not lie as an appropriate remedy. Nor can it, under the current Bankruptcy Code, unlike the former Bankruptcy Act, provide a basis for the denial of the general discharge in bankruptcy. The current statute containing the grounds for denial of discharge, section 727 of the Bankruptcy Code, does not include the false financial statement as one of the cognizable grounds.

For the foregoing reasons, the complaint of the plaintiff must be denied.

 A further matter requires disposition by the court, a pretrial motion to compel discovery and for sanctions. A hearing was held on the portion of this motion which requested sanctions on September 14, 1984. It was then established that the counsel for plaintiff timely served a notice for taking depositions and a subpoena duces tecum upon the defendant, requiring the defendant's appearance on June 28, 1984, in the offices of the plaintiff's counsel; that the defendant did not appear for the deposition; that the plaintiff incurred expenses in the sum of $120 in attorney's fees plus a court reporter's fee in the sum of $25.00 plus sheriff's fees in the sum of $9.70, for a total of $154.70; that the defendant not only failed to attend the deposition, but did not timely notify the plaintiff's counsel of his inability to do so. It is therefore appropriate in accordance with the Rules of Bankruptcy Procedure and the inherent powers of the court to enforce its own orders to impose sanctions upon the defendant in the sum of $154.70, payable forthwith to the plaintiff.

It is therefore, for the foregoing reasons,

ORDERED, ADJUDGED AND DECREED that the defendant's indebtedness to plaintiff in the sum of $142,574.43 be, and it is hereby, declared to be dischargeable in bankruptcy.[7] It is further

ORDERED that, as a prerequisite to his discharge in bankruptcy, the defendant pay to the plaintiff within 30 days of the date of entry of this order or within such additional time as the court may grant for good cause shown in writing within the same 30 days the sum of $154.70.

**6.** In the course of the hearing of September 14, 1984, the conclusionary oral testimony of both parties' witnesses was to the effect that no "new" money was extended in reliance on the false financial statement.

**7.** Testimony in the hearing of September 14, 1984, also involved the admission of the defendant that he had pleaded guilty to disposing of mortgaged property, namely two backhoes, in Barton County, Missouri. Although, as noted in the text of this memorandum, the complaint raises no issue of willful and malicious conversion within the meaning of section 523(a)(6) of the Bankruptcy Code, this might have the potential of an issue tried by implication within the meaning of Rule 15(b) of the Federal Rules of Civil Procedure. But the evidence is insufficient to provide a basis for judgment on the theory of wilful and malicious conversion, for there is no competent evidence of the value of the backhoes converted.