**In the Matter of Russell N. STEINMAN, and Wanda Sue Steinman, Debtors.**

**FIRST SECURITY BANK, Plaintiff,**

v.

**Russell N. STEINMAN, and Wanda Sue Steinman, Defendants.**

Bankruptcy No. 84–03450–SJ.
Adv. No. 85–0103–SJ.

United States Bankruptcy Court,
W.D. Missouri,
St. Joseph Division.

April 10, 1986.
As Corrected Aug. 26, 1986.

Robert B. Miner, Jack B. Robertson, St. Joseph, Mo., for plaintiff.

G. Brent Powers, St. Joseph, Mo., for defendants.

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND FINAL DECREE AND JUDGMENT DECLARING RUSSELL N. STEINMAN'S INDEBTEDNESS TO PLAINTIFF TO BE NONDIS-CHARGEABLE IN BANKRUPTCY IN THE SUM OF $79,287.18 AND THAT PLAINTIFF HAVE JUDG-MENT FOR THE SAME

DENNIS J. STEWART, Chief Judge.

In its prior order of June 14, 1985, this court set forth the following considerations, which are incorporated herein, to the following effect:

"The plaintiff bank seeks a decree of nondischargeability of the defendants' indebtedness to it in the sum of $79,287.18 plus interest as a liability created by fraud within the meaning of § 523(a)(2) of the Bankruptcy Code. After joinder of the issues by the pleadings, the action came on before the court for hearing on its merits on June 4, 1985, in St. Joseph, Missouri. Plaintiff then appeared by counsel, Jack B. Robertson, Esquire, and Robert B. Miner, Esquire, and the defendants appeared personally and also by counsel, G. Brent Powers, Esquire, and Mark G. Stingley, Esquire. Evidence was then adduced on the basis of which

the following findings of fact are warranted.

### Findings of Fact

"The material facts which are established by the facts in this case are quite straightforward and simple. The defendant Russell N. Steinman submitted a series of financial statements to the plaintiff bank beginning on September 25, 1978, in which it was represented that the defendants owned some 180 acres of farmland which in fact they did not own. They farmed all or part of the 180 acres in question, according to the evidence, but did not own it. Rather, it was owned by Mrs. Steinman's father and was either leased to the defendants or loaned to them for the purpose of some of their farming operations. According to his testimony, Mr. Steinman was well aware of the fact that he and his wife did not own the 180 acres. It was assiduously pointed out by means of evidence adduced on behalf of defendants that Mr. Steinman had not made this misrepresentation to the plaintiff until 1978; that he had previously, at least as far back as 1964, submitted financial statements to the plaintiff in which he had not represented that the defendants owned the 180 acres; and that the bank's officers had had a long course of dealing with Mr. Steinman and either knew or should have known that the debtors had not gained title to the property prior to the rendition of the 1978 financial statement. It was also demonstrated that the bank made no effort, before making loans on the basis of the 1978 financial statement and its successors, to ascertain by resort to the records of the appropriate county recorder whether the defendants in reality had title to the 180 acres. But neither did the defendant Russell N. Steinman offer any intelligible explanation of why he suddenly executed a financial statement which departed materially in this respect from the financial statements which he had formerly been rendering. The assertion was made that the bank officer actually made out the statement, but the unequivocal testimony of that officer is that he redacted on the statement only the information orally given him by the defendant, and there is no evidence from which an inference might be drawn that Mr. Steinman did not have a full and fair opportunity thoroughly to review the financial statements in this respect before he affixed his signature to them. The evidence was uncontradicted to the effect that the current balance of loans extended after the financial statement of September 25, 1978, is $119,077.

"At the inception of the trial of the merits of this action on June 4, 1985, the plaintiff sought leave of court to amend its complaint also to show that an indebtedness to First State Bank of King City in the sum $54,000 was scheduled as having been incurred by the debtors in the mid 1970's, and not included in any financial statement rendered after that time. The defendants strenuously objected to the proposed amendment on the ground of surprise and inability to defend on short notice. The court denied the objection and permitted the amendment because the 'new' facts were necessarily known by them prior to trial and because of the policy behind Rule 15(b), F.R.Civ.P., made applicable in bankruptcy cases by Rule 7015 of the Rules of Bankruptcy Procedure, that such amendments are to be liberally allowed, even in the course of trial. Counsel for the defendants continued to object to this ruling throughout the duration of the trial, complaining that he was unable to bring out facts relevant to the defense on such short notice. Thus, according to the court's recollection and its notes of the hearing, the defendant was not asked for any explanation of why this $54,000 indebtedness was never mentioned in any of the financial statements and consequently he did not give any explanation. This omission at the current juncture appears to be critical. The plaintiff offered evidence of another instance in which the defendant Russell N. Steinman rendered a financial statement to another bank in

which he omitted mention of the $54,000 indebtedness. It appears to this court that evidence of this other omission is admissible under the exceptions to the doctrine of *res inter alios acta,* especially when no explanation has been given for the omission."

On the basis of the foregoing partial findings for fact, the court issued its order on June 14, 1985, setting an adjourned hearing on the merits for July 9, 1985, in St. Joseph, Missouri. The following pertinent considerations were stated in that order.

"At the inception of the trial of the merits of this action on June 4, 1985, the plaintiff sought leave of the court to amend its complaint also to show that an indebtedness to First State Bank of King City in the sum of $54,000 was scheduled as having been incurred by the debtors in the mid 1970's, and not included in any financial statement rendered to the bank after that time. The defendants strenuously objected to the proposed amendment on the ground of surprise and inability to defend on short notice. The court denied the objection and permitted the amendment because the "new" facts were necessarily known by them prior to trial and because of the policy behind Rule 15(b), F.R.Civ.P., made applicable in bankruptcy cases by Rule 7015 of the Rules of Bankruptcy Procedure, that such amendments are to be liberally allowed, even in the course of trial. Counsel for the defendants continued to object to this ruling throughout the duration of the trial, complaining that he was unable to bring out facts relevant to the defense on such short notice. Thus, according to the court's recollection and its notes of the hearing, the defendant was not asked for any explanation of why this $54,000 indebtedness was never mentioned in any of the financial statements and consequently he did not give any explanation. This omission at the current juncture appears to be critical. The plaintiff offered evidence of another instance in which the defendant Russell N. Steinman rendered a financial statement to another bank in which he omitted mention of the $54,000 indebtedness. It appears to this court that evidence of this other omission is admissible under the doctrine of *res inter alios acta,* especially when no explanation has been given for the omission. "The omission of the $54,000 would appear to be a material one. The court, however, is concerned that the late amendment of the complaint may have prevented the defendants from offering any palpable explanation for the omission of the $54,000 indebtedness from the financial statements. The liberal policy of Rule 15(b), *supra,* favoring amendments, even those made on the eve of or in the course of trial, is counterbalanced by a recognized procedure whereby the court may grant the adverse party a reasonable and fair opportunity to respond to the evidence supporting the late amendment. As further provides in Rule 15(b), *supra,* '[T]he court may grant a continuance to enable the objecting party to meet such evidence.'

"It therefore appears that application of the governing procedural principles to this case require the holding of an adjourned hearing in which the defendant Russell N. Steinman will be granted an opportunity to explain the omissions in the relevant financial statements of the $54,000 debt and the plaintiff will have an opportunity to put on rebuttal evidence on that issue."

In the hearing which was subsequently held pursuant to that order, the defendant Russell N. Steinman did not deny failing to include the $54,000 debt in the 1978 financial statement to the plaintiff bank on at least two occasions. Nor did defendant Russell N. Steinman offer or attempt any explanation at all for such omissions.[1] Rather, it was the contention of the defendant Russell N. Steinman made in the course

---

1. From the court's records of the adjourned hearing, it does not appear that either counsel posed questions to the debtors on this issue.

of the adjourned hearing that the omission of this $54,000 indebtedness was immaterial and was not a matter which could have been the subject of reasonable reliance by the plaintiff; that, as an unsecured indebtedness, it could have been relevant only to the issue of cash flow, something into which the plaintiff bank did not inquire and for which there is no blank space on the forms of the financial statements which it provided to defendants; and that the payments on the indebtedness of some $2,000 per year did not become material in any sense until sometime in 1983 when the ability of the defendants to pay the indebtedness came into sharper focus.

### Conclusions of Law

■ Section 523(a)(2) of the Bankruptcy Code excepts from discharge liabilities which are created by, *inter alia*, intentional misrepresentations. The decisional authority interpreting this section holds that it is to receive a strict, literal interpretation, like all other exceptions to discharge. *In re Taylor*, 514 F.2d 1370, 1373 (9th Cir.1975). It is incumbent upon the plaintiff to prove by clear and convincing evidence[2] each element of the exception: That a material misrepresentation was knowingly made by the debtor and reasonably relied upon by the creditor to its detriment in damages. In the instance of neither of the misrepresentations at bar—the misrepresentation of the ownership of property and the omission of the $54,000 debt from the financial statements—do defendants seriously challenge the existence of all elements except that of reasonable reliance.[3] With respect to the misrepresentation concerning title of the property which they farmed, the debtors insist that it was open to the bank to check the public records as to title of the property and thereby discover for itself that, despite the defendant Russell N. Steinman's own representation, they were not, in reality, the owners of the property. This contention finds considerable support in a doctrine which is currently enjoying a great deal of popularity in bankruptcy courts and which holds that a creditor cannot be held reasonably to have relied on a debtor's financial statement when that creditor could discover its falsehoods through means of information which are readily available to it.[4] This court has applied the doctrine in the past in cases in which it was demonstrated that the creditor's means of discovery were unusually convenient and inviting. See, e.g., *Matter of Stout*, 39 B.R. 438, 441 (Bkrtcy.W.D.Mo. 1984) ("[P]laintiff not only did not bother to check the nearby court records, but also ignored the transactions reflected in the debtor's bank account, which indicated the existence of other debts.") But to advocate a further extension of the doctrine is virtually tantamount to saying that a creditor may not reasonably rely on any financial statement—that there are always some means of checking the veracity of the debtors' responses, whether it be by county level records, federal government records located in ASCS offices and elsewhere, employer records, income tax records, credit

---

**2.** Cf., however, *Matter of Ireland*, 49 B.R. 269, 270–71 (Bkrtcy.W.D.Mo.1985), and cases and authorities therein cited.

**3.** Further, it is plain from the evidence that all the other elements have been proven by clear and convincing evidence: the making of the false statements is admitted, as is the fact that they appear to have resulted in damage, i.e., the extension of credit. Further, the defendants, in the manner detailed in the text of this memorandum, have not controverted the evidence which indicates that the false statements were intentionally and knowingly made. And their silence on this issue, after an explicitly granted opportunity to testify on it, must be accorded considerable weight.

**4.** "Dischargeability shall not be denied where a creditor's claimed reliance on a statement would be so unreasonable as not to be an actual reliance at all ... The failure to take even routine precautions to investigate the situation ... shows how little reliance [plaintiff] placed on the representations of [defendant]." *In re Montbleau*, 13 B.R. 49, 53, 54 (Bkrtcy.D.Mass. 1981). "The majority of cases make it clear that the creditor has a duty to make a reasonable effort to check the credit rating of the Debtor and not rely upon just the financial statement." *Matter of Breen*, 13 B.R. 965, 969 (Bkrtcy.S.D. Ohio 1981).

bureau records and practically endless congeries of other sources, official, public and otherwise. The foreseeable result would be, not only the demise of the financial statement as we know it, but scarcity of farm and consumer credit to an extent which would not otherwise exist absent such a stultifying practice in our bankruptcy courts. In this action, accordingly, in which the evidence does not plainly show the ready and convenient availability of other sources of information with respect to the relevant misrepresentation, this court believes the doctrine of *Matter of Stout, supra,* and other like cases to be inapplicable. This is especially so under the circumstances of this case, in which, as the defendants are quick to point out, they had not reported the property to be theirs in financial statements rendered to the bank prior to 1978; that the plaintiff bank knew, prior to 1978, that the property belonged to a parent of one of the defendants; and that their sudden representation of ownership of the property in the 1978 financial statement should have placed the bank on inquiry. But the contrary is true. The bank was warranted, in view of the apparent close relationship between the parent owner of the property and the defendants and the fact that defendants had long farmed this property, in assuming that the defendants had made a true representation on the financial statement; that, even if the title of record might still be in the parent, beneficial ownership might truly be in the defendants. The circumstances of this action demonstrate that the bank was justified in relying on the defendant's misrepresentation in this regard. And the misrepresentation was material. It is difficult to imagine how a misrepresentation of the fact of ownership of the very land which the debtors' farm can be anything but material. This court therefore holds, on the basis of this misrepresentation above, a decree of nondischargeability is justified with respect to all new money extended in reliance on the 1978 financial statement.[5]

■ Cumulatively, but also separately and independently, the *unexplained* omission of the $54,000 indebtedness provides an addition predicate for the decree of nondischargeability. Again, the defendants, although given an explicit opportunity to do so, did not deny this omission or attempt to attribute it to neglect or forgetfulness or anything, as a matter of fact, except intention. Nor is there any contention, as in the usual case of this type, that it was the bank officers who directly or indirectly, are responsible for the omission. The element of intention is firmly established by the evidence. The materiality of the misrepresentation and the reasonableness of the bank's reliance on it are established by the fact that the size of the debt was not insubstantial. Nor does it matter that the bank did not inquire into cash flow. If it is true, as the defendants assert, that the failure to mention this indebtedness brought the issue of cash flow into focus, there is nothing in the evidence to suggest that the bank would not have inquired into cash flow had the indebtedness been mentioned. The decree of nondischargeability is therefore warranted on the basis of this ground, whether considered separately or cumulatively with the other material misrepresentation.

Counsel for the defendants have skillfully presented the defendants' case, both evidentiarily and in argument. But the facts compel the court to issue its decree of nondischargeability with respect to the balance due on the new money extended in reliance on the 1978 financial statement, in the sum of $79,287.18.[6]

For the foregoing reasons, this court issued its order on October 15, 1985, directing the parties to show cause in writing

**5.** According to the evidence which has to date been taken by the court in the two hearing conducted by it, the total amount of money extended by plaintiff to the defendants throughout the course of dealing between them was $129,287.18 and $50,000 was extended prior to the issuance of the financial statement of September 25, 1978. See note 12, *infra.*

**6.** See note 5, *supra.* See also note 12, *infra.*

why a nondischargeable judgment should not be issued against both defendants in the sum of $79,287.18. Both parties responded to the show cause order. The defendants urged amendments which would have compelled entry of a decree of dischargeability of the indebtedness.[7] But, as noted above, the evidence clearly and convincingly demonstrates the material falsity of the financial statement which was subscribed by the defendant Russell N. Steinman.

■■■ The court agrees, however, that the evidence which has been adduced does not warrant the entry of a judgment against the defendant Wanda Sue Steinman. It is clearly shown that she did not actually sign the offending financial statement. And the evidence is insufficient to demonstrate that she actually appointed Mr. Steinman as her agent to sign the financial statement. Although she admitted that she knew of the transaction and knew that some representations would be made by Mr. Steinman on which the bank

could be expected to rely, the evidence is not sufficiently definite, either that she acquiesced in any such representations or that she gave Mr. Steinman general authority to act for her in signing the financial statement.[8] It is not even shown that she knew that a financial statement, as such, was being signed.[9] Her answers to the questions asked her at trial in this regard were to the effect that, given the nature of the transaction, she should have expected that representation would be made concerning the defendants' finances and financial status.[10] But no evidence was extracted from her that shows that she actually or by implication appointed her husband as her agent to subscribe the financial statement here in question.[11] This court therefore concludes that the judgment can be rendered against Mr. Steinman only.

The plaintiff, in response to the former show cause order of the court, urges to the court that the sum of $117,487, the entire balance due as of the date of bankruptcy.[12]

7. It is principally argued in the response that "plaintiff bank had actual knowledge on or about March 19, 1984, that the Steinmans did not own the 180 acres in question and yet, armed with that actual knowledge, the bank extended further credit to defendants on July 11, 1984." In the action at bar, however, the court makes an award of damages based only on the "new" or "fresh" money extended in reliance on the September 25, 1978, disclosure statement. Plaintiff has not demonstrated that any additional new advances were made as a result of its independent reliance on the financial statement of July 11, 1984.

8. In their response to the court's prior show cause order, counsel for the defendant urges that, after Mrs. Steinman executed the financial statement of September 15, 1984, Mr. Steinman assured her that the bank knew that the 180 acres was not his. But there is no independent evidence to support this assertion of the bank's knowledge. And, otherwise, the contention only further points to the guilty knowledge of Mr. Steinman that the 180 acres were not his. Further, although granted an explicit opportunity, by means of the court's scheduling the adjourned hearing, to deny the falsity of the statements, or his lack of knowledge of that falsity, the defendant Russell N. Steinman made no testimonial denial on either issue.

9. There was no evidence that Mrs. Steinman ever went to the bank, ever spoke to any of the

bank officers respecting the September 25, 1978, financial statement, or that she even knew of the statement.

10. There is no evidence that she knew precisely when the financial statement of September 25, 1978, had been or was being executed by her husband.

11. It is true that, ordinarily, agency can be proven by the slightest evidence when a wife has knowingly accepted the benefits of her husband's entering into a contract. But there is no evidence in this case that Mrs. Steinman *knowingly* accepted those benefits.

12. The plaintiff states: "[T]he amount of nondischargeable debt should be $117,487, which is the difference between the unpaid balance of the debt of the Steinmans at the time of trial ($129,287) and the amount of debt of the Steinmans at the time the September 25, 1978, financial statement was delivered to the bank." The trouble with this assertion is that it begs the question evidentiarily and asks the court to assume that only about $12,000 in principal and interest was owed as of September 25, 1978, and that no payments were made thereafter. But the evidence which has been adduced does not show the status of the account between the parties with such clarity. Neither of the parties adduced in evidence any running statement of balance due on September 25, 1978. Defend-

But, as this court has previously observed, the amount of the nondischargeable judgment must be limited to the "new" or "fresh" money extended in reliance on the false financial statement.[13] This the evidence shows to be a sum of $50,000 less than the $129,287.18 due at the time of trial.[14]

Accordingly, for the foregoing reasons, it is hereby

ORDERED, ADJUDGED AND DECREED that defendant Russell N. Steinman's liability to plaintiff in the sum of $79,287.18 be, and it is hereby, declared to be nondischargeable in bankruptcy. It is further

ADJUDGED that plaintiff have and recover the same sum from the defendant Russell N. Steinman.[15]

ants' exhibit number 1 purports to show a "total line" of credit of $11,800 on that date with "9% due 12–15–78." But "line of credit" ordinarily refers to the amount of credit *available,* and it is not otherwise interpreted in the evidence in this action with respect to this exhibit. The document thus does not negative the possibility that much more than this amount was owed as of September 25, 1978. And, according to the oral testimony of Dale Moore, the president of the plaintiff bank, a loan was extended to the defendants on September 29, 1980, in the sum of $46,342.00, which was a renewal of several prior notes (tr. 21–22). The papers before the court indicate that the interest rate as of September 25, 1978, was 9% per annum. The next loan consolidation which took place, according to Mr. Moore's testimony, was on April 29, 1981. Over that period of time, some $3,000 in additional interest would seem to have accrued, making a round total of $50,000 which, as of 1981, was a "consolidation" of prior indebtedness. In view of the burden on the plaintiff to prove its case by clear and convincing evidence, *Matter of Curl,* 49 B.R. 302, 304–306, n. 6

(Bkrtcy.W.D.Mo.1985), this court cannot, on the record before it, single out any evidence which shows that the "consolidated" debt of around $50,000 did not arise, as a matter of "fresh" or "new" money, prior to September 25, 1978.

13. See *Matter of Etcheson,* 47 B.R. 8, 10–11 (Bkrtcy.W.D.Mo.1984), and cases and authorities there cited.

14. See note 12, *supra.*

15. The evidence fails to show that Wanda Sue Steinman signed the financial statement of September 25, 1978, or that she made any *intentional* misrepresentation to the bank in signing subsequent financial statements. But the evidence shows that it was the financial statement of September 25, 1978, which was principally relied upon. Any inadvertent misrepresentation which she may have made was at the behest of her husband who advised her that such would not constitute fraud or misrepresentation. See, e.g., note 8, *supra.*