In re Julia A. MEDOW, Debtor.

W.E. DAVIS COMPANY, Plaintiff,

v.

Julia A. MEDOW, Defendant.

Bankruptcy No. 82–00090–BKC–JAG.
Adv. No. 82–0271–BKC–JAG–A.

United States Bankruptcy Court,
S.D. Florida.

Dec. 10, 1982.

Herbert Stettin, c/o Lapidus & Stettin, P.A., Miami, Fla., for plaintiff.

A.M. Schwitalla, Coral Gables, Fla., Gars, Dixon & Shapiro, Miami, Fla., for debtor.

Arthur Rice, Miami, Fla., for trustee.

William R. Roemelmeyer, Miami Shores, Fla., Trustee.

## FINDINGS AND CONCLUSIONS

JOSEPH A. GASSEN, Bankruptcy Judge.

This adversary proceeding commenced with the filing of a complaint by W.E. Davis Company (Davis) seeking to determine the dischargeability of a debt owed by Julia A. Medow, the defendant, arising out of what began as a purchase by W.E. Davis Company of a minority stock interest in Nailite Weathershield Products, Inc. (Weathershield) and a loan to its subsidiary, Nailite, Inc. (Nailite). Julia Medow together er with her husband owned seventy-five percent of the stock of Nailite Weathershield and was an officer in both companies. Nailite Weathershield is a Florida corporation whose sole assets were the outstanding stock of Nailite, Inc., a Texas corporation engaged in the manufacture and sale of home improvement products, with its principal place of business in Dade County, Florida. The defendant's husband, Robert Medow, was the chief operating officer of both Weathershield and Nailite. Julia Medow never actively participated in the management or operation of either corporation although she was corporate secretary of each organization.

Some time prior to November 11, 1980, Robert Medow advertised in the Wall Street Journal soliciting investors in order to obtain badly needed working capital. As a result of the solicitations, the plaintiff contacted Robert Medow and began negotiations ultimately resulting in the execution of the agreement dated November 11, 1980 (Plaintiff's Exhibit A).

W.E. Davis Company had been involved previously with financial investment in various manufacturing entities. It was not without the benefit of its experiences from past financial dealings when it engaged in the agreement with Robert Medow and Nailite Weathershield. The testimony and evidence produced in this case clearly described Davis Company's awareness of Weathershield/Nailite's desperate need for additional working capital, as evidenced by Davis' use of this fact as a bargaining tool.

■ The thrust of the Davis Company complaint and the proof at trial concerns the financial statements (Plaintiff's Exhibit B) which Davis alleged it relied upon in its financial decision making. Plaintiff seeks a determination of nondischargeability on the debt in issue based upon 11 U.S.C. § 523(a)(2) which provides in pertinent part, as follows:

(a) A discharge under Section 727 . . . does not discharge an individual debtor from any debt—

(2) for obtaining money, property, services, . . . by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; or

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's . . . financial condition;

(iii) on which the creditor to whom the debtor is liable for obtaining such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive.

Subsection (A), by its terms, excludes a representation respecting the debtor's or an insider's financial condition. The corporations are insiders of Julia Medow under 11 U.S.C. § 101(25). Since plaintiff's case is entirely based on the giving of the corporations' financial statements, § 523(a)(2)(A) is not applicable.

■ Turning to § 523(a)(2)(B), the evidence is sufficient to find that the financial statements in question contained misstatements and omissions altogether resulting in a significant overstatement of the net worth of the companies represented therein. The court concludes that this overstatement represents a material misstatement as required under subsection (i), and concludes that the misstatement was made with the intent to deceive.

The debtor takes the position that these financial statements cannot prevent her discharge because they were statements for Weathershield/Nailite furnished by Robert Medow, as chief operating officer. The court finds, however, that Mrs. Medow was fully aware that the purpose of the agreement ultimately made between the parties was to obtain needed capital for the business, and that her signature was required. Under these circumstances her lack of active participation in the daily operation of the business does not discharge her duty of inquiry; a wife cannot avoid responsibility for her actions simply by stating that her husband requested her signature. *Beneficial Consumer Discount Co. v. Barrett, In re Barrett*, 2 B.R. 296 (Bkrtcy.E.D.Pa.1980). Although she may not have had actual knowledge of the errors in the statements, she signed the statements to obtain a benefit. The falsity of the representations will therefore be counted against her, because she may not obtain the benefits and repudiate the responsibilities.

All of the elements of § 523(a)(2)(B) have been satisfied except for subsection (iii). The court concludes that the plaintiff has failed to meet its burden of proof required under Code § 523(a)(2)(B)(iii) regarding the issue of reasonable reliance.

■ The party seeking determination of nondischargeability on the basis of false pretenses or false representation has the burden of proving each element of the claim. See, *Waterbury Community Federal Credit Union v. Magnusson, In re Magnusson*, 14 B.R. 662 (Bkrtcy.N.D.N.Y.1981). Davis Company employed its own independent accountants, the Arthur Anderson Company, before executing the agreement of November 11, 1980. Although Davis had the benefit of the data and report prepared by its accountants, it chose not to present any testimony regarding either the findings of its accountants, or the exact nature of Anderson's agreement with W.E. Davis Company, points crucial to the issue of reasonable reliance. The evidence and testimony produced at trial did indicate that the plaintiff changed its position during the course of the negotiations preceding the eventual agreement (Plaintiff's Exhibit A), from that of a prospective investor/partner, to one of a creditor/lender. The testimony also shows that the plaintiff knew Weathershield to be desperate for working capital and, therefore, vulnerable to the escalating negotiation demands pressed upon it by the plaintiff.

It is unlikely that an informed investor would hire an accounting firm such as Arthur Anderson and then not rely upon their efforts. The court need not speculate as to Anderson's findings to conclude that Davis Company was not without notice of the red flags present and readily available for discovery. W.E. Davis Company's recognition of at least some of the red flags involved in this case, as exhibited by its exploitation of the debtor's desperate need for capital, when considered together with Davis' acknowledged experience in financial dealings, requires this court to conclude that it did not, in fact, rely on the financial statements at issue herein.

■ The court need not reach the issue of whether reliance on the financial statements by such an informed investor would be reasonable because of the finding that

such reliance did not occur in this case. However, it might well be that reliance, if it occurred, would be unreasonable on that facts of this case. A court will look to the creditor's sophistication, among other factors, to find whether its reliance was reasonable. *National Bank of North America v. Newmark, In re Matter of Newmark,* 20 B.R. 842 (Bkrtcy.E.D.N.Y.1982). The trial testimony shows that the plaintiff was not an unsophisticated investor. Rather, Davis Company was shown to be in the business of making financial investments in manufacturing firms not unlike Weathershield.

Reliance may be considered reasonable where a close friendship exists between the parties, and where further investigation would not uncover a great majority of unlisted claims. *Northern Trust Co. v. Garman, In re Garman,* 643 F.2d 1252 (7th Cir.1980). However, testimony in this case shows what was acknowledged by the plaintiff's own financial witness: that the information as to falsity of the financial statements was readily available for inspection in the Weathershield files.

Where a warning signal such as the desperate need for capital is exhibited, a lender has the duty to exercise ordinary prudence, especially a sophisticated investor such as the plaintiff. Although in some circumstances, negligent business conduct is excusable if committed unwittingly, a complaining creditor cannot turn its back on an obvious red flag and simply choose to ignore it. *American Finance Corp. v. Arden, In re Arden,* 2 B.C.D. 204 (Bkrtcy.D.R.); see also *First National Bank Dayton v. Breen, In re Breen,* 13 B.R. 965 (Bkrtcy.S.D. Ohio 1981). These circumstances require the creditor, at the very least, to proceed with extreme caution and circumspection.

Plaintiff abandoned Count III of its original complaint prior to trial. See amended complaint (C.P. No. 14a). Although the relief requested by the plaintiff in Counts I and II was that discharge of the debtor be denied, no evidence was presented from which the court can find or conclude that such relief should be granted.

As required by B.R. 921(a), a separate Final Judgment incorporating these Findings and Conclusions will be entered this date.