**In re Keith R. RICHARDS, Debtor.**

**F & M MARQUETTE NATIONAL BANK, Plaintiff,**

**v.**

**Keith R. RICHARDS, Defendant.**

**Bankruptcy No. 3–83–2087.**
**Adv. No. 84–0209.**

United States Bankruptcy Court,
D. Minnesota,
Third Division.

April 14, 1987.

See also, Bkrtcy., 58 B.R. 233.

from stay motion, except on special order of the      Court.

John Troyer, Minneapolis, Minn., for plaintiff.

William Kampf, Minneapolis, Minn., for defendant.

## ORDER

DENNIS D. O'BRIEN, Bankruptcy Judge.

This matter is before the Court on Defendant's motion for summary judgment. John Troyer represents Plaintiff F & M Marquette National Bank (Marquette or the Bank), and William Kampf represents Defendant Keith R. Richards. The motion was orally argued on December 3, 1986, and all briefs have been filed. The Court, having considered the oral arguments of counsel, having reviewed the briefs, exhibits and affidavits submitted, and being fully advised in the matter, now makes this Order pursuant to the Federal and Local Rules of Bankruptcy Procedure.

### I.

Debtor is a former banker, real estate broker and individual general investor. His experience in banking dates back to 1963, and he has held substantial ownership interests as well as executive and directorship positions in several family owned banks and a bank holding company. In 1979, Richards sold his bank holdings, became self-employed, and was involved in a number of investment ventures. Unfortunately, none of his investments proved profitable, and Richards filed for relief under 11 U.S.C. Chapter 11 in December 1983. The case was later converted to Chapter 7 on April 12, 1984.

In 1980, Richards established a lending relationship with Plaintiff Marquette which resulted in the Bank extending him an unsecured line of credit in the amount of $150,000.00. On July 15, 1981, this obligation was consolidated with a note representing a second loan of $35,000.00 made in

February of 1981, resulting in a single, combined note of $185,000.00. The consolidation note was thereafter renewed from time to time, but never paid. The last renewal occurred on August 31, 1983, in the amount of $178,300.00, renewed through September 30 of that year.

An additional obligation to the Bank was incurred by Richards through its issuance, at his request, of a letter of credit in favor of Northland Mortgage Company in the amount of $125,000.00. The letter was covered by Richards' unsecured note; was extended several times ending with an October 14, 1983, extension into November of that year; and was ultimately drawn upon by Northland in November, prior to expiration of the last extended period. The unsecured standby note covering the letter of credit was last renewed on July 14, 1983, as a demand note.

On March 30, 1983, the Bank requested that Richards furnish a current personal financial statement. The Bank was considering an extension of the line of credit note (then in the amount of $185,000.00), and the $125,000.00 letter of credit commitment, along with the standby note, at Richards' request. On April 30, 1983, Richards delivered to the Bank a financial statement dated February 1 of that year pursuant to the request.

The financial statement disclosed that Richards owned assets valued at $4,092,000.00; had liabilities of $1,165,000.00; and that he had a net worth of $2,927,000.00. The disclosure was materially false and, for purposes of present consideration, was presumably issued with the intent to deceive the Bank. Richards has filed an affidavit wherein he attests that at the time the financial statement was delivered to the Bank, he was both insolvent and without unencumbered assets of any kind.

The financial statement was complete on its face and evidenced no material discrepancies, inconsistencies or omissions. Upon receipt and review of the statement, the Bank proceeded with a series of renewals on the line of credit note, and extensions of the letter of credit commitment, along with the standby credit note. The renewals and extensions were made by the Bank without any independent investigation or inquiry into the financial affairs or circumstances of Keith Richards.

Richards promised to either pay the line of credit note at final maturity on September 30, 1983, or to collateralize it with security acceptable to the Bank by that time. He did neither. At filing of the petition on December 13, 1983, the line of credit note was in default in the amount of $178,500.00, and the letter of credit note (activated by the draw of Northland Mortgage Company in November 1983) was in default in the amount of $125,000.00.

■ Marquette brought this adversary proceeding seeking judgment of nondischargeability of the debts owing it under 11 U.S.C. §§ 523(a)(2)(A) and (B). The Bank alleges that Richards' promise to either pay the line of credit note or collateralize it with security satisfactory to Marquette upon final maturity, September 30, 1983, was fraudulent within the meaning of § 523(a)(2)(A). The Bank further claims that both debts are nondischargeable under § 523(a)(2)(B) considering the false financial statement furnished it by Richards in April of 1983 and the subsequent renewals and extensions granted by the Bank.

Richards moved for summary judgment and argues that the facts, in the light most favorable to the Bank, do not sustain a cause of action under either §§ 523(a)(2)(A) or (B). The Court believes that Richards is right regarding the cause of action asserted under § 523(a)(2)(A) and that he is entitled to summary judgment. For the reasons discussed below, summary judgment should be denied regarding the cause of action asserted under § 523(a)(2)(B).

## II.

11 U.S.C. § 523(a)(2)(B) provides in pertinent part:

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit to the extent obtained by—

(B) use of a statement in writing—

   (i) that it is materially false;

   (ii) respecting the debtor's or insider's financial condition;

   (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

   (iv) that the debtor caused to be made or published with intent to deceive; or . . .

## A.

▉ Richards first argues that summary judgment is appropriate because Marquette failed to make an independent investigation to verify his financial statement. Defendant claims that, as a matter of law, Plaintiff cannot meet the reasonable reliance test of § 523(a)(2)(B) and cites *In re Harms*, 53 B.R. 134 (Bankr.Minn.1985); *First Nat'l Bank of Dayton, Ohio v. Breen (In re Breen)*, 13 B.R. 965 (Bankr.S.D.Ohio 1981) and numerous cases in between. These cases, it is argued, require such an investigation either: (1) as the fulfillment of a threshold duty to be performed by the recipient of a financial statement consistent with the reasonable reliance requirements of § 523(a)(2)(B); or (2) as proof of reasonableness in light of accepted industry standards. The distinction is one without significant difference.

It was the case of *In re Breen, supra*, that apparently started this notion of the requirement for independent investigation, and it has since become "a doctrine which is currently enjoying a great deal of popularity". *Matter of Steinman*, 61 B.R. 368 (Bankr.W.D.Mo.1986). The *Breen* Court made the incredible observation that "[t]he majority of cases make it clear that the creditor has a duty to make a reasonable effort to check the credit rating of the debtor and not rely upon just the financial statement." *Breen* at 969. Not so incredible is the fact that *Breen* furnished no citation for the stated doctrine.

Nevertheless, numerous cases have repeated the notion in one way or another, using *Breen* as authority. Interestingly, only one of the 20 cases citing *Breen* for the proposition, however, actually based its own holding on the doctrine.[1] In fact, *Breen* itself may not have been decided on the basis of the creditor's failure to inde-

---

1. *See: Matter of Newmark*, 20 B.R. 842 (Bankr.E.D.N.Y.1982) (cited for proposition that creditor must investigate financial red flags for reliance to remain reasonable); *In re Patch*, 24 B.R. 563 (D.C.Md.1982) (cited for proposition that *Breen* articulated the fourth standard of unreasonableness, but decided on the basis of the three-part emerging standard of reasonableness); *In re Hagedorn*, 25 B.R. 666 (Bankr.S.D.Ohio W.D.1982) (cited for proposition that ordinary care is incorporated into reasonable reliance under § 523(a)(2)(A), but the reason for decision was the creditor's knowledge of the falsity); *In re Medow*, 26 B.R. 305 (Bankr.S.D.Fla.1982) cited for proposition that red flags must be heeded, but decided on basis of actual reliance); *In re Ardelean*, 28 B.R. 299 (Bankr.N.D.Ill.E.D.1983) (cited for proposition that creditors have a duty to verify, but decided on basis of three-part emerging standard); *In re Detling*, 28 B.R. 469 (Bankr.N.D.Iowa 1983) (cited for proposition that creditors cannot rely merely on debtor's financial statements, but decided on basis of creditor's knowledge of false financial statements); *In re Simpson*, 29 B.R. 202 (Bankr.N.D.Iowa 1983) (cited for proposition that red flags must be heeded and suggests a duty to verify, but decided on basis of creditor's knowledge of red flags); *In re Duncan*, 35 B.R. 323 (Bankr.W.D.Ky.1983) (cited for proposition that *Breen* articulated the fourth standard of unreasonableness, but decided on basis of creditor's knowledge of false statements); *In re Weiss*, 42 B.R. 314 (Bankr.E.D.Pa.1984) quoted *Breen's* unauthoritative statement, but was dismissed for lack of any evidence); *In re Delano*, 50 B.R. 613 (Bankr.Mass.1985) (cited for proposition that *Breen* articulated the fourth standard of unreasonableness, creditors have a duty to verify financial statements, and creditors cannot rely merely on debtor's financial statements, but decided on basis of creditor's knowledge of red flags); *In re Bridges*, 51 B.R. 85 (Bankr.W.D.Ky.1985) (cited for the proposition that *Breen* articulated the fourth standard of unreasonableness, but decided on basis of creditor's knowledge of red flags); *In re Reder*, 60 B.R. 529 (Bankr.Minn.1986) (cited for the proposition that the creditor's independent verification of prospective debtor's financial statement is a prerequisite to bringing a successful complaint under § 523(a)(2), but decided on basis of creditor's knowledge of red flags.) *In re Harmer*, 61 B.R. 1 (Bankr.Utah 1984) (cited for proposition that *Breen* articulated the fourth standard of unreasonableness, but decided on the basis of three-part emerging standard); and *In the matter of Stout*, 39 B.R. 438 (Bankr.W.D.Miss.1984) (cited for proposition that *Breen* applied to this case and decided upon the same basis).

pendently investigate the financial statement at issue. The *Breen* Court stated: "Breen's condition on the stand was pitiful. He gave the appearance of sincerity. He certainly was not normal mentally or physically." *Breen* at 968. *Breen* had been in bad shape for seven or eight years. *Ibid.* One can easily infer that the *Breen* Court did not consider the debtor capable of intending to deceive anyone about anything; or, that the Court did not believe that anyone could rely on the representation of such a mental and physical wreck.

In any event, to the extent that there is such a doctrine of duty owed by the recipient of a financial statement, it is not a sound one, and this Court specifically rejects it.

Nondischargeable fraud under § 523(a)(2)(B) is a serious matter. It involves active and intentional wrongdoing by misrepresentation and deceit. It is an intentional tort—it is not negligence. Furthermore, nondischargeable fraud is found only in the light of clear and convincing evidence.

The *Breen* doctrine grafts onto the law of intentional fraud, the defense of contributory negligence. Contributory negligence has never been recognized as a defense to an intentional tort. This legal observation presents an academic indication that the doctrine may be flawed. That indication becomes stronger in consideration of several aspects of its application.

In an earlier time, perhaps, distrust might have been the principal ethical standard of business, and each creditor might have had a "duty" to protect himself against his antagonist, the debtor. Presently, however, trust is the guiding ethical standard of business, and assertions of fact may justifiably be relied upon without investigation, not only where such investigation would be difficult, but likewise, where discovery would be easy. Prosser, *On Torts*, 5th Ed. 1984, 751–752. Furthermore, this Court agrees with the Supreme Court of the State of Missouri which long ago stated that:

> [G]enerally speaking, until there be written into the law some precept or rule to the effect that the heart of a man is as prone to wickedness as is the smoke to go upward, and that every man must deal with his fellow man as if he was a thief and a robber, it ought not to be held that trust cannot be put in a positive assertion of a material fact, known to the speaker and unknown to the bearer, and intended to be relied upon. Lamm, J., in *Judd v. Walker*, 1908, 215 Mo. 312, 114 S.W. 979.

Under *Breen*, it would appear that one is legally entitled to rely on the word of another only after one has first utilized all means reasonably available to prove the other a liar. Or does the duty have a less stringent standard? If so, what is it? To whom is this duty owed and why?

It is not a defense to an action for battery that the victim negligently failed to see it coming, or that he did not use all reasonable means available to avoid the blows. It is no less absurd for one who defrauds another to defend against the consequences of the act by arguing, in effect, "Yes, I lied, and deceived the plaintiff for my gain and his loss, but it was his own fault for trusting me. He should have been more careful, and I should not be held accountable".

Finally, the *Breen* doctrine presents an inherent absurdity. It seems obvious that one who independently investigates the financial circumstances of another, relies less on the financial statement and more on his own investigation directly proportionate to the time and effort invested in the inquiry. A logical consequence of the *Breen* doctrine is that, by proving compliance with the requirement to conduct an independent, reasonable investigation, a plaintiff will have undone his cause of action. Following the requisite proof, the defendant could be expected to promptly move for judgment based on the compelling argument that the plaintiff did not rely on the false financial statement at all—he relied instead on his own investigation, negligent as it was.

There is no reason to believe that Congress intended to make intentional fraud

dischargeable as against a negligent creditor. Nor is there reason to believe that Congress intended to place any affirmative duty on the recipient of a false financial statement as a prerequisite to a nondischargeability cause of action.

Section 523(a)(2)(B) of the Bankruptcy Code is the successor of § 17(a)(2) of the Bankruptcy Act. The term "reasonably relied" in the Code modifies the term "relied" as it appeared in the Act. Prior to enactment of the Code as the Bankruptcy Reform Act of 1978, the concept of reasonableness regarding reliance in nondischargeable fraud cases appeared only in case law, and it had not been significantly developed. Several courts had denied creditors nondischargeability judgments under circumstances where:

(1) the creditor knew that the information furnished was false, *Bank of Commerce & Savings v. Matthews (In re Matthews)*, 272 F. 263 (7th Cir.1921);

(2) the financial statement itself contained information insufficient to present the apparent financial condition of the author, *Dial Finance Co. v. Duthu*, 188 So.2d 151 (La.1966); and

(3) where the creditor's actual investigation suggested that the author's financial statement was false or insufficient, *Kentile Floors v. Winham*, 440 F.2d 1128 (9th Cir.1971).

In light of these situations, the courts labeled the claimed reliance as unreasonable. Far from evidencing any new development or radical change in the law of intentional fraud, however, these decisions did nothing more than overstate the simple truth that: despite allegations and testimony of reliance, there can be none where the recipient knows of the falsehood; receives information that on its face is insufficient to provide a basis for reliance; or where he has conducted an investigation that suggests falsehood. The existence of such facts contradicts the very characteristics of reliance.

Congress understood this in incorporating the term "reasonably relied" into § 523(a)(2)(B). It did so to codify what it perceived to be a trend in the case law of implying the requirement of reasonable reliance under § 17(a)(2) of the Act. This trend is explained in the legislative history to § 523(a)(2) as a response to unscrupulous lenders who deliberately obtained false or insufficient financial statements to later use against the borrower during the bankruptcy. S.REP. NO. 989, 95 CONG.2d SESS. 78 (1978); *reprinted in* 1978 U.S. CODE CONG. & ADMIN.NEWS 5787, 5864; H.REP. NO. 595, 95th CONG., 1st SESS. 130–31, 364 (1977); *reprinted in* 1978 U.S.CODE CONG. & ADMIN.NEWS 5963, 6091–92, 6320.

Congress, by using the term, "reasonably relied" in § 523(a)(2)(B), intended only that reliance not be successfully asserted in bad faith as a matter of convenience after the fact to avoid dischargeability. It did not intend to make dischargeable a dishonest debt simply because the victim of the fraud might have been gullible or negligent in the transaction. In this Court's opinion, those cases that speak of "emerging standards of reasonableness", inappropriately mix notions of contributory negligence with intentional tort law.[2] This tends to result in confusion of matters of fact with standards of law.

Where reliance is at issue in a nondischargeability action based on a false financial statement, it is appropriate for a court to examine such things as: the creditor's standard practices in evaluating loan applications; industry standards; and particular circumstances existing when the financial statement is presented. These matters all bear on the test of reasonableness. But reasonableness is simply a measure against which circumstantial evidence that tends to prove or disprove reliance is to be compared. It should be viewed as a test of credibility. Reasonableness is not, with respect to the victim of an intentional tort, a framework of legal standards fashioned from an affirmative duty.

---

**2.** *See* Footnote No. 1, *supra.*

There exists nothing in the record of this case that compels the conclusion, as a matter of law, that Marquette did not reasonably rely on Richards' February 1, 1983, financial statement in renewing his notes and in extending his letter of credit. The Bank claims that it presumed Richards' knowledge, experience, and integrity in banking; and that it noted his reputation as a former member of the banking community in dealing with him. These assertions, along with evidence of business practices, industry standards and other existing circumstances, will present circumstantial evidence from which a factual finding can be made determining the reliance issue.

Summary judgment is inappropriate on Defendant's first argument.

B.

■ Richards' second and alternative argument is that summary judgment is appropriate since, as a matter of law, the Bank's reliance could not have been detrimental and it was not damaged by the fraud. According to Richards, he was both insolvent and without equity in any assets at the time the financial statement was furnished the Bank. Therefore, he argues, there was nothing the Bank could have done to improve its position or collect its debt had the financial statement not been presented and had the notes and letter of credit not been renewed or extended.

The Bank argues that the mere forebearance from exercising its legal remedies is sufficient detrimental reliance to obtain a judgment of nondischargeability; and further, that the judgment should declare the entire debt nondischargeable regardless of what might have been available to actually satisfy it at the time of the fraud. Finally, it argues that there was equity in certain property owned by the Debtor and that the debt could have been at least partially satisfied.

Section 523(a)(2) is remedial, not punitive. Forebearance is sufficient detrimental reliance to establish actionable fraud, but it does not necessarily follow that the fore-

bearing party will be entitled to judgment of nondischargeability of the entire debt. Forebearance where action would have been meaningless does not result in a circumstance sufficient to render a debt nondischargeable. Otherwise, application of § 523(a)(2) in such an instance would be solely punitive and unrelated to its purpose. The purpose of the statute is to afford the defrauded party the opportunity to collect so much of the debt as exists by reason of the fraud.

■ It must be presumed that there existed a potential recovery to the Bank absent the fraud inducing forebearance here. Otherwise, there would ordinarily be no reason to commit the fraud in the first place. Furthermore, once the fraud is established, the entire debt should be held nondischargeable except to the extent that the Defendant can show by clear and convincing evidence that a lesser amount is justified. Defendant's 1986 affidavit stating in essence that he over-estimated his net worth in April of 1983 by $2,927,000.00 and that he really had neither net worth nor unencumbered property at the time, is not clear and convincing evidence on the issue.

Without a shift of the burden of proof to the Defendant on the matter, he has the continuing benefit of hiding behind the fraud. Only the Defendant was in a position to know his actual financial circumstances at the time of the fraud, and he lied about them. During forebearance, time passes along with potential for unrecorded passing and dissipating of assets. A natural consequence of the fraud in forebearance cases is that it often renders the defrauded party incapable of later proving the extent of the loss.

Finally, it is not clear, based on the present record, that forebearance is the only reliance manifested by the Bank. The $125,000.00 letter of credit was not drawn upon by Northland Mortgage Company until November 1983, which was after the letter was extended based on the financial statement.

Based on the foregoing reasons, the Court believes that summary judgment is inappropriate on Defendant's second argument.

### IV.

ACCORDINGLY, IT IS HEREBY ORDERED:

1. Defendant is entitled to summary judgment against Plaintiff on Plaintiff's cause of action for nondischargeability under 11 U.S.C. § 523(a)(2)(A);

2. Defendant's motion for summary judgment on Plaintiff's cause of action under 11 U.S.C. § 523(a)(2)(B) is denied.