**In re Robert D. BELISLE d/b/a Bob Belisle Productions, Debtor.**

**COMMONWEALTH OF MASSACHUSETTS, Plaintiff,**

v.

**Robert D. BELISLE d/b/a Bob Belisle Productions, Defendant.**

**Bankruptcy No. 90–10165. Adv. No. 90–1029.**

United States Bankruptcy Court, D. Rhode Island.

Dec. 10, 1991.

A. Gregory Frazier, Cranston, R.I., for debtor/defendant.

Howard R. Croll, Fontaine & Croll, Ltd., Woonsocket, R.I., for plaintiff.

Louis A. Geremia, Trustee, Cuzzone, Geremia & Civittolo, Providence, R.I.

Office of the United States Trustee, Stephen Woodbury, Boston, Mass.

## DECISION AND ORDER

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

Heard on August 12, 1991 on the complaint of the Commonwealth of Massachusetts to have its claim in the amount of $28,870.37 against the Debtor, Robert D. Belisle, declared nondischargeable, pursuant to § 523(a)(2)(A). The Commonwealth alleges that Belisle obtained and converted to his own use, pension payments mistakenly paid to his father, after his death. Said pension benefits, of course, would (or should) have ceased upon the death of the retiree, were it not for the fraudulent conduct of Belisle as alleged in the pleadings, and as is fully supported by the evidence.

The Supreme Court in *Grogan v. Garner*, — U.S. —, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) has recently cleared the air as to burden of proof, holding that the ordinary preponderance of the evidence standard shall be applied in all dischargeability actions under § 523(a). Based upon the entire record, and with this evidentiary standard in mind, we make the following findings of fact and conclusions of law:[1]

(1) The Plaintiff has clearly established that the Debtor's conduct was fraudulent within the meaning of the statute, and on the issue of fraud all questions of credibility are resolved against Robert Belisle, and in favor of the Plaintiff.

(2) Subsequent to the death of the retiree, Emile Belisle, on November 20, 1981, the Commonwealth of Massachusetts continued to forward monthly pension benefit payments for deposit to his Florida bank account.[2]

(3) The Commonwealth unwittingly deposited a total of $28,870 to said account, right up until January 1985, when payments were finally stopped, upon a chance notification by the Florida bank that Emile Belisle had died.

(4) The funds in question were obtained as the result of a scheme specifically and fraudulently designed by Robert Belisle, whose machinations included, inter alia: a) not notifying the State Retirement Board of his father's death; b) surreptitiously keeping the Florida bank account open for the sole purpose of not disrupting the flow of payments; c) returning Annual Report of Earnings statements to the Retirement Board on behalf of his dead father in March 1983 and April 1984, signed "R. Belisle," suggesting that the retiree was alive and well and living in Florida.

(5) That through its Annual Report of Earnings form (attached hereto as Appendix A), the Commonwealth was requesting financial information as to living retirees, and that by completing the questionnaire as he did, the Debtor willfully intended to and successfully concealed the fact that the pensioner had died.

(6) Between November, 1981 and January, 1985, Robert Belisle clandestinely withdrew 39 monthly payments from his deceased father's bank account, for his own use and benefit.

(7) The Debtor's explanation as to why he appropriated the funds to his own use, and completed and signed the Report as he did, is rejected as a fabrication.[3]

---

1. This decision constitutes our findings of fact and conclusions of law. *See* Bankruptcy Rule 7052 and Fed.R.Civ.P. 52.

2. Said deposits were made by wire transfer directly into the account of Emile Belisle, obviating the need for his signature.

3. The Debtor contends that it was his belief that the Annual Report of Earnings is "just another form questionnaire," authored by a bureaucracy that typically circulates material with no particular relevance. While the Debtor's characterization of bureaucratic practice in general may well be correct, it is our conclusion in this case that Mr. Belisle understood precisely the purpose of the report in question, and that he knowingly set out to circumvent it.

A less imaginative but more honest response would have been to return the report to the Retirement Board, with a copy of the death certificate. If the Debtor took the position that he was under no affirmative duty to do anything, he would be correct. However, the payments would have ceased pursuant to the bold

## DISCUSSION

■ At the conclusion of the hearing, the Court was uncertain as to whether the Commonwealth's failure to note the death of Emile Belisle, is available to the Debtor as a defense in this § 523(a)(2)(A) proceeding. Upon consideration, we agree with those courts holding that creditors acting in bad faith, or without reasonable reliance, should not prevail in § 523(a)(2)(A) actions. *See Coman v. Phillips (In re Phillips)*, 804 F.2d 930, 933 (6th Cir.1986). But this is not a rigorous requirement to overcome; it is not a "legal standard fashioned from an affirmative duty," *F & M Marquette National Bank v. Richards (In re Richards)*, 71 B.R. 1017, 1022 (Bankr.D.Minn.1987); rather it simply requires that the creditor act in plain, old fashioned good faith.[4] *See In re Phillips*, 804 F.2d at 933.

■ Based on our examination of the authorities dealing with this narrow issue, we conclude that the Commonwealth's failure to "pick up on" Emile Belisle's death is not a defense available to this Debtor, who is found to have committed fraud under § 523(a)(2)(A). *See Matter of Earls*, 80 B.R. 978, 980 (W.D.Mo.1987); *In re Johnson*, 109 B.R. 885, 892 (Bankr.N.D.Ind. 1989); *In re Richards*, 71 B.R. 1017, 1021 (Bankr.D.Minn.1987). Notwithstanding the admitted "human error" of the Plaintiff's employees in not noticing that the Annual Report of Earnings was signed "R. Belisle" and not "Emile Belisle," "[t]here is no reason to believe that Congress intended to make [a debt obtained by] intentional fraud dischargeable as against a negligent creditor." *In re Richards*, 71 B.R. at 1021.[5]

Accordingly, in light of the foregoing authorities, our findings and conclusions, and pursuant to the provisions of § 523(a)(2)(A), Robert D. Belisle's debt to the Commonwealth of Massachusetts is determined to be nondischargeable in the amount of $28,870, plus interest and costs.

Enter Judgment consistent with this opinion.

---

type provision: *"FAILURE TO SUBSCRIBE TO AND FILE THIS CERTIFICATE BEFORE JANUARY 31, 1982 OF EACH YEAR SHALL RESULT IN FUTURE PENSION PAYMENTS BEING WITHHELD UNTIL SUCH STATEMENT IS FILED."* (*See* Appendix A attached hereto.)

4. In light of the evidence, we would find, if required to do so, that the Commonwealth acted in good faith, and that its reaction to Belisle's conduct was reasonable.

5. Even if the creditor's negligence were an issue in this § 523(a)(2)(A) action, we would not have found the Plaintiff's conduct, on this record, to be a bar to recovery.

**1016**

ANNUAL REPORT OF EARNINGS FOR CALENDAR YEAR 1982

| Emile | E. | Belisle |
|---|---|---|
| Print Name   (First) | (Middle) | (Last) |

| 23 Craigie Avenue | Johnston | R.I. | 02919 |
|---|---|---|---|
| Address   (P.O. Box or Street) | (City) | (State) | (Zip Code) |

SOCIAL SECURITY NUMBER___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_____

NOTICE:   In accordance with the provisions of Section 91A of Chapter 32 of the
General Laws employees retired by reason of disability are required to
file a statement of any earnings from gainful occupation during the
preceding year under the penalties of perjury.

FAILURE TO SUBSCRIBE TO AND FILE THIS CERTIFICATE BEFORE JANUARY 31, 1982 OF EACH
YEAR SHALL RESULT IN FUTURE PENSION PAYMENTS BEING WITHHELD UNTIL SUCH STATEMENT
IS FILED.

COMPLETE EACH QUESTION ON THIS FORM          WRITE "YES" OR "NO"

1. Were you engaged in full time employment during the year 1982?  No
2. Were you engaged in any part time gainful employment during the year 1982? No
3. Did you receive any earnings from self employment during the year 1982?   No
4. A copy of your Form W-2, Form 1099 or Form 1040 Schedule C must be filed
   with this form.  If you were engaged in any gainful employment during the
   year 1982 kindly list your employer, firm or corporation below.

| EMPLOYER | ADDRESS | EARNINGS |
|---|---|---|
| | | |
| | | |
| | | |

5. Total earnings for calendar year 1982?

   IF NONE, write NONE___None_____       TOTAL:_____

6. Do you understand that you are signing this statement under the penalties of
   perjury and that failure to file this statement whether or not you have any
   earnings might result in a discontinuance of your pension payments?

                                      WRITE "YES" OR "NO"  Yes

SUBSCRIBED UNDER THE PENALTIES OF PERJURY
DATE___March 9, 1983_____      SIGNATURE _R. Belisle_____

IF MORE SPACE IS NEEDED USE THE BACK OF THIS SHEET FOR ANY ADDITIONAL STATEMENT YOU
MAY WISH TO GIVE IN CONNECTION WITH ANY EMPLOYMENT OR EARNINGS OR ANY OTHER DETAILS
YOU MAY WISH TO REPORT.

NOTE:   A change in the law in 1977 provides that any employee retired for reasons
of disability may now earn the difference between the amount of his pension
and the amount he would now be receiving as salary plus $3,000.00 before his
pension is subject to a refund.